UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 10-CR-0074 (JFB)

ADALBERTO ARIEL GUZMAN

Petitioner,

VERSUS

UNITED STATES OF AMERICA,

Respondent.

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  AUG 06 2025  ★

LONG ISLAND OFFICE

**MEMORANDUM AND ORDER**
August 6, 2025

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

Adalberto Ariel Guzman ("petitioner" or "Guzman"), proceeding *pro se*, moves for a writ of habeas corpus under 28 U.S.C. § 2255 vacating his conviction after a jury trial.

On September 9, 2013, a jury convicted the petitioner of: (1) one count of conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5); (2) two counts of murder, in violation of 18 U.S.C. § 1959(a)(1); (3) two counts of discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and (4) two counts of causing the death of another through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1). (ECF Dkt. Nos. 1387, 1536). On October 2, 2014, the Court sentenced the defendant to life imprisonment plus 35 years. (ECF Dkt. Nos. 1520, 1536).

In his Section 2255 petition, Guzman raised ineffective assistance of counsel claims on numerous grounds. (ECF Dkt. Nos. 1675, 1692). The government filed its opposition (ECF Dkt. No. 1701) ("Gov. Opp."), and Guzman did not file a reply. For the reasons set forth below, the petition is denied in its entirety on the merits.[1]

I. LEGAL STANDARD

A "prisoner in custody" under a sentence imposed by a federal court "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" because: (1) the sentence "was imposed in violation of

---

[1] The Court assumes familiarity with the underlying record, which it references only as necessary to explain its decision.

the Constitution or laws of the United States"; (2) the court lacked jurisdiction to impose the sentence; or (3) "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). With respect to ineffective assistance of counsel claims under Section 2255(a), the Supreme Court has stated that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro v. United State*, 538 U.S. 500, 504 (2003).

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) that "counsel's representation fell below an objective standard of reasonableness," *id.* at 688; and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.'" *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691). For instance, a "lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,'" *id.* at 588 (quoting *Strickland*, 466 U.S. at 690). "However, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 690–91).

Under *Strickland*'s second prong the petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that they "undermine confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 226 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). A court assessing the prejudice from counsel's alleged errors must assess "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63–64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Crucially, "[u]nlike the determination of trial counsel's performance under the first prong of

2

*Strickland*, the determination of prejudice may be made with the benefit of hindsight." *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (internal quotation marks and citations omitted).

Where a petitioner files a Section 2255 petition *pro se*, the Court construes the petitioner's claims liberally. *See Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995) (noting a *pro se* complaint is to be "liberally construed in [the petitioner's] favor"). A petitioner challenging his conviction on the ground of ineffective assistance of counsel "[bears] the burden of proving his claim." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001).

With respect to the issue of an evidentiary hearing, Section 2255 states that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 28 U.S.C. *foll.* § 2255. The Second Circuit has made clear that "[t]o warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'" *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000)). The Second Circuit has provided guidance on how a district court should determine when an evidentiary hearing is necessary. *See id.* at 213–15. In particular, the Court noted that, given the absence of pre-motion discovery in a Section 2255 case, "a petitioner may need only to identify available sources of relevant evidence rather than obtain it as in civil cases or seek a discovery order from the court . . . ." *Id.* at 213–14.

Further, "the district court may use methods under Section 2255 to expand the record without conducting a full-blown testimonial hearing." *Chang*, 250 F.3d at 86. Thus, there are scenarios where the district court can exercise its "discretion to choose a middle road that avoid[s] the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing" and may determine that a full hearing "would add little or nothing to the written submissions." *Id.*

In the instant case, applying the above-referenced standard, the Court concludes in its discretion that no evidentiary hearing is warranted because the underlying record conclusively demonstrates that petitioner's claims are implausible and he is entitled to no relief under Section 2255.

## II. DISCUSSION

Petitioner challenges his conviction on ineffective assistance of counsel grounds, namely, that his counsel failed to: (1) obtain funds to hire an expert to testify about the enterprise status of La Mara Salvatrucha street gang ("the MS-13"); (2) object to the admission of evidence regarding other crimes of petitioner; (3) argue that the two murders were not in aid of the racketeering activity of the MS-13; (4) clarify petitioner's need for an

3

interpreter at trial; (5) allow petitioner to testify on his own behalf at trial; (6) move to suppress cellular telephone records; (7) ensure the quality of the courtroom language interpreters at trial; (8) move to dismiss the Section 924(c) charge in Count Three; (9) move to dismiss the indictment for lack of jurisdiction; and (10) conduct an independent investigation. *See* Petitioner's Memorandum of Law, ECF Dkt. No. 1692 ("Pet.'s Br.").

As set forth below, the Court concludes that each of petitioner's claims lacks merit. With respect to the first *Strickland* prong, petitioner has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness with respect to any of his claims. In any event, even assuming *arguendo* that the first requirement has been met, petitioner has not satisfied the second *Strickland* standard because there is no reasonable probability that the proceedings would have yielded a different outcome if petitioner's counsel had performed in the manner now sought by petitioner. The evidence in this case—which included the testimony of cooperating witnesses, petitioner's incriminating statements on recordings made by a cooperating witness, petitioner's confession to law enforcement, and other extensive corroboration of his involvement in the MS-13 and the charged murders—was overwhelming and there is no reasonable probability that any of the issues raised by petitioner, either individually or collectively, could have altered the outcome of the trial.

A. Failure to Hire an Expert Witness

Petitioner argues that he received ineffective assistance of counsel because his trial lawyer decided not to hire an expert witness to testify on whether the MS-13 was an "enterprise." (Pet.'s Br. at 8.). Specifically, he maintains that "[a]n expert witness would have testified that MS-13 is a street gang of rogue individuals that commit crimes for no other purpose than to gratify themselves" and "[t]here is no Enterprise nor Organization, and definitely no structure." (Pet.'s Br. at 9.). Although the existence of an enterprise is an essential element of the crimes with which he was charged, *see* 18 U.S.C. §§ 1959, 1962, the Court concludes that petitioner has not satisfied either prong of *Strickland* with respect to this claim.

With respect to the first prong, the Second Circuit has held that "the tactical decision of whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997). In particular, the Supreme Court has made clear that "[s]trategic decisions of counsel—including whether to hire an expert—are entitled to a strong presumption of reasonableness" on a claim of ineffective assistance of counsel. *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (internal quotation marks and citation omitted).

Here, petitioner does not detail how this unidentified "gang expert" could have substantiated his argument that there was no organization among the MS-13. Moreover, relying on Second Circuit law, the Court precluded the government from having its law enforcement officers testify to any conclusions regarding whether the MS-13 was an enterprise. (Trial Tr. 174). *See United States v. Mejia*, 545 F.3d 179, 198 (2d Cir. 2008). In addition, months before petitioner's trial, a jury convicted two of his co-conspirators after a trial at which the government proved with overwhelming evidence the existence of MS-13 as an enterprise affecting interstate or foreign commerce. *See United States v. Martinez*,

4

978 F. Supp. 2d 177, 184 (E.D.N.Y. 2013), *aff'd in part, vacated in part and remanded on other grounds sub nom. United States v. Prado*, 634 F. App'x 323 (2d Cir. 2016). Indeed, the undersigned has presided over several MS-13 trials and no defense attorney has utilized an expert in an attempt to demonstrate the absence of a criminal enterprise or even attempted to challenge the enterprise element given the government's compelling evidence, including through numerous cooperating witnesses, regarding the existence, structure, rules, and purpose of the MS-13.

In short, it was reasonable for counsel to decide for strategic reasons not to pursue any expert testimony in light of the lack of any factual or legal basis for such testimony to effectively rebut the government's extensive evidence with respect to the enterprise element. Therefore, petitioner has not proven that counsel's decision not to pursue a "gang expert" fell below the constitutional standard for effective assistance under *Strickland*.

Even assuming *arguendo* that petitioner satisfied *Strickland*'s first prong, he has failed to satisfy the "prejudice" prong. At trial, the government introduced overwhelming evidence that the MS-13 was a criminal enterprise that affected interstate and foreign commerce. For example, cooperating witness Tony Guevara testified that the MS-13 had compulsory meetings and operated under a strict set of rules, including procedures governing initiation and codes of conduct for members, as well as requirements to "fight" and "kill" rival gang members. (Trial Tr. 319–22). Guevara also testified that members collected money to buy weapons and send assistance to jailed members and that the MS-13 sent weapons to El Salvador using money collected in its New York cliques. (Trial Tr. 323, 341). Cooperating witness Carla Santos testified that the MS-13 identified themselves with hand signs and nicknames, and belonged to different local cliques. (Trial Tr. 710–11, 716–19). She also testified that she received money from the gang's treasurer to disburse to incarcerated members, including members incarcerated in El Salvador and Honduras. (Trial Tr. 712). She further stated that the MS-13 committed violent crimes to claim streets from rival gangs. (Trial Tr. 711).

Without any plausible argument to rebut this this "strong, specific testimonial evidence," petitioner has failed to show that there is a reasonably probability that the outcome of his trial would have been different had the jury heard from any purported expert witness with respect to the MS-13. *Waiters v. Lee*, 857 F.3d 466, 481 (2d Cir. 2017).

Accordingly, the ineffective assistance claim based on the failure to hire an expert witness has no merit.

B. Failure to Object to the Admission of Evidence About Other Crimes of Petitioner

Petitioner argues that his counsel was ineffective for allowing a significant amount of testimony regarding other crimes not charged against him. (Pet.'s Br. at 11.). Specifically, Guevara testified about various violent acts allegedly committed by MS-13 members, including shootings. (Trial Tr. 332–36). Cooperating Witness Jeremy Amaya also testified about murdering a rival gang member (Trial Tr. 420–22), as well as unsuccessful attempts to shoot and kill rival gang members (Trial Tr. 446–48) in which Guzman was not involved. Petitioner states that counsel failed to "correct that testimony" on cross-examination and that this testimony unduly prejudiced him. (Pet.'s Br. at 11–12.).

5

First, petitioner has failed to satisfy the first prong of *Strickland* because defense counsel objected to the admission of this evidence of other acts of violence by the MS-13, not involving petitioner. For example, defense counsel stated that:

> I think we are getting to the point with respect to the violence of this MS-13 chapter he belonged to but he was 11 or 12 years old, our client, at that time. It appears he is not even mentioning the chapter our client was involved with. Doesn't appear it existed at the time. We are getting into major violence. It reminds me of the old Mafia cases; you try to bring every crime of the Mafia. It's this defendant and his actions on trial here.

(Trial Tr. 325). Notwithstanding the objection, the Court allowed the evidence so that the government could establish the existence of the enterprise, and noted that with respect to Rule 403 balancing "I don't think we reached that point yet." (Trial Tr. 326). Thus, there is no basis to claim that defense counsel was ineffective simply because the Court ruled against petitioner.

In any event, even if counsel's objection was insufficient or there were other grounds counsel should have raised to preclude the evidence (or should have addressed on cross-examination), petitioner has not shown that this testimony prejudiced him. Any risk of prejudice to the jury from such evidence was cured by the Court's limiting instruction, which noted: "[E]vidence about crimes allegedly committed by members and associates of the MS-13 who are not on trial . . . is offered solely to establish the nature of the alleged enterprise of the MS-13. It has no bearing on this defendant personally and should not be considered for any other reason." (Trial Tr. 1565–66). *See Zafiro v. United States*, 506 U.S. 534, 539 (1993). In short, there is nothing in the record to suggest that, even if the government did not offer this testimony, there is a reasonable probability that the outcome of the trial would have been different.

Accordingly, petitioner has not met either of *Strickland*'s two prongs with respect to this testimony, regarding acts of violence by other members of the MS-13, which was permissible by the government to establish the existence of the enterprise.

C. Failure to Argue Alternative, Non-Gang Related Motives for the Two Murders

Petitioner claims that counsel failed to argue that the murders of Vanessa Argueta and Diego Torres were not gang-related, but rather were the result of "a relationship gone bad." (Pet.'s Br. at 14.). Moreover, petitioner further contends that defense counsel failed to cross-examine witnesses about this issue. (Pet.'s Br. at 15.).

This claim fails under the first prong of *Strickland* because the record shows that defense counsel adequately cross-examined the government's witnesses about possible non-gang related motives for the murders. For example, testimony was elicited about the victim's relationship with an MS-13 member. (*See* Trial Tr. 70). Defense counsel similarly pursued this theme as a general matter by questioning Amaya about "personal family matters involving gang members" and eliciting testimony that "every act of violence is not gang-related." (Trial Tr. 520–22). Defense counsel also cross-examined Santos about a co-conspirator's admission to killing Argueta for his other girlfriend at the time. (Trial Tr. 870–73).

6

Moreover, in summation, defense counsel explicitly made this argument to the jury, stating, "[T]his wasn't an MS-13 murder. This was a guy with wounded pride. This is a guy in a love triangle." (Trial Tr. 1483).

Moreover, with respect to the second prong of *Strickland*, the government offered compelling evidence regarding the gang-related motive for the murders that made clear that the crimes were not the result of "only a love triangle, and not some organization sanction murder." (Pet.'s Br. at 14.). Indeed, petitioner acknowledges that the evidence showed that Argueta "attempted to have Cruzito assaulted, or murdered" by a rival gang. (Pet.'s Br. at 4.). As outlined in the government's summation, it was that perceived disrespect of the MS-13 that led Cruzito to report to his MS-13 clique leader what had occurred and the gang members then agreed that Argueta should be killed for causing such disrespect. (Trial Tr. 1501–05). There was no additional argument or evidence on this issue that could have been raised by defense counsel and persuaded the jury otherwise.

In short, petitioner has not shown that his counsel failed to reasonably pursue the alternative theories for the murder, nor has he demonstrated there is a reasonable probability that any additional questioning or arguments on this issue could have affected the outcome of the trial.

### D. Failure to Clarify Petitioner's Need for an Interpreter at Trial

Petitioner argues that his counsel did not adequately combat the "impression" created by the government that "petitioner was lying about needing" an interpreter. (Pet.'s Br. at 16.). Petitioner notes several instances where, after the government questioned witnesses about petitioner's ability to speak English, his defense counsel failed to counter this line of questioning. (Pet.'s Br. at 16–17.). Petitioner claims his trial lawyer failed to elicit testimony to show that, even though an individual understands a given language, they understand their native language better. (Pet.'s Br. at 16.).

Again, petitioner fails to establish any deficient performance on this issue because defense counsel raised this concern with the Court and obtained a favorable jury instruction to avoid any potential prejudice. More specifically, defense counsel requested an instruction clarifying that petitioner was bilingual and had requested a Spanish interpreter, which was within his rights. (*See* Trial Tr. 16 ("I think we should add an instruction that Mr. Guzman does speak English, and he does speak Spanish also. And it is his right to utilize the services of an interpreter. And I think we should do it in a way so that the jurors aren't misled or confused by what's going on here, because they may see him and I speaking in English.")). The Court gave the requested instruction at the beginning of the trial:

> I also want to note, as you can see there are interpreters here, Spanish interpreters. The defendant Guzman speaks both English and Spanish and, therefore, you will see him communicating with his attorneys in English without the assistance of a Spanish interpreter. However, he has requested an interpreter to be available to him because he believes there may be certain complex legal terms in English that he may not understand, and the law gives him the right to request such assistance from interpreters . . ."

(Trial Tr. 120–21).

In sum, petitioner cannot prevail on his claim that his counsel somehow acted

7

unreasonably in failing to address this issue. In any event, he has also failed to show that there is any reasonable probability that his use of an interpreter prejudiced him in the eyes of the jury and affected the outcome of his trial.

### E. Failure to Call Petitioner to Testify on His Own Behalf

Petitioner asserts that his lawyer "pressured [him] into not taking the stand because Counsel stated it would bolster[] the government's case, and allow the government to question [him] intensely." (Pet.'s Br. at 19.). Petitioner alleges that his testimony would have rebutted the confession he made to the FBI upon his arrest, which he claims was given under duress. (Pet.'s Br. at 18–19.). The Court finds this argument unpersuasive.

"[T]he right to testify is a fundamental constitutional right, personal to the defendant that cannot be waived by counsel." *Campos v. United States*, 930 F. Supp. 787, 790 (E.D.N.Y. 1996). It is clear from this record that petitioner was aware of his right to testify, and that it was his choice to make. In particular, the Court explained to petitioner that he had a constitutional right to testify on his own behalf, and petitioner confirmed at trial that he understood that the decision to testify was his alone:

THE COURT: The other thing I want you to do is obviously I'm going to confirm whether your client wants to testify.

MR. VILLANUEVA: And we're prepared for that now.

THE COURT: So let me do that now.

Mr. Guzman, I want to make sure that you understand that you have a constitutional right to testify if you wish to do so in this trial. Do you understand you have that constitutional right?

THE DEFENDANT: Yes, your Honor.

THE COURT: Your lawyer has indicated that you do not wish to testify; is that accurate?

THE DEFENDANT: Yes, your Honor.

THE COURT: You understand that's a decision that's ultimately up to you? Do you understand that's your decision, not his, do you understand that?

THE DEFENDANT: Yes, your Honor. (Trial Tr. 1292–93).

On this trial record, notwithstanding petitioner's conclusory assertion otherwise, it is clear that petitioner understood that he had the right to testify in his own defense and that he made the decision, rather than his counsel, not to exercise that right. *See Hansen v. Johnson*, 680 F. Supp. 3d 247, 263 (E.D.N.Y. 2023); *see also Campbell v. United States*, No. 06-cr-41(CM), 2015 WL 1062176, at *7 (S.D.N.Y. Mar. 9, 2015)("[Petitioner] offers nothing more than his conclusory and self-serving claims to dispute this record."). Similarly, to the extent petitioner questions the strategic advice his counsel gave him on this issue or his counsel's failure to effectively cross-examine Special Agent McMullen regarding his confession, the Court concludes that defense counsel thoroughly cross-examined Special Agent McMullen regarding the circumstances surrounding the confession. (Trial Tr. 285–304). Defense counsel also attacked Special Agent McMullen's credibility in the summation. (Trial Tr. 1471–76).

8

In short, petitioner has failed to demonstrate that counsel was ineffective in any way as to his advice with respect to petitioner's right to testify, nor has petitioner demonstrated that any other strategic approach would have had a reasonable probability of affecting the outcome of the trial.

### F. Failure to Move to Suppress Records of Telephone Calls

Petitioner contends that defense counsel's assistance was ineffective because his lawyer failed to move to suppress evidence of historical cell site records, including the records for his phone, obtained without any court order or search warrant supported by probable cause. (Pet.'s Br. at 21.). Petitioner claims that the government obtained these records in violation of *Carpenter v. United States*, 585 U.S. 296, 316–20 (2018), in which the Supreme Court held that law enforcement is required to obtain a search warrant for cell site data. The Court finds that this claim fails under both prongs of *Strickland*.

With respect to prong one, "[u]nder *Strickland*, we must 'consider the circumstances counsel faced at the time of the relevant conduct.'" *Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008) (quoting *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005)). Thus, an attorney is not ineffective for failing to anticipate a change in the law, unless such failure was "objectively unreasonable." *Id*.

Here, Guzman's trial took place in 2013, which was over four years prior to the ruling in *Carpenter*. Therefore, the Court concludes that defense counsel was not ineffective for failing to anticipate that decision. Indeed, in *Carpenter*, the Supreme Court explicitly noted that the issue it reached, in 2018, was a "new phenomenon" that it had not yet addressed. 585 U.S. at 309. *See, e.g.*, *Michel v. Kirkpatrick*, No. 18-cv-2469 (PKC), 2020 WL 5802314, at *11 (E.D.N.Y. Sept. 29, 2020) ("[T]he Court finds that trial counsel's failure to object in 2011 to the prosecution's use of cell site data that was obtained without a search warrant, at a time when none was required, did not render the assistance Petitioner received ineffective."); *accord United States v. Jackson*, 781 F. App'x 188, 191 (4th Cir. 2019) (per curiam); *United States v. Shaw*, No. 12-20044-JWL, 2020 WL 1233751, at *3 (D. Kan. Mar. 13, 2020).

In any event, even assuming the failure to move for suppression was objectively unreasonable, petitioner was not prejudiced by the admission of these cell site records in light of the overwhelming evidence of his guiltiness even in the absence of that evidence.

### G. Failure to Assess the Quality of the Spanish Language Interpreters

Petitioner asserts that he received ineffective assistance of counsel because his lawyer—who also speaks Spanish—did not identify the errors made by interpreters during the trial in translating for government witnesses. (Pet.'s Br. at 22–23.). For example, petitioner points to an incident where the government requested that the interpreter translate word for word and an incident where a witness requested a different interpreter, and the trial court accommodated both requests. (Trial Tr. 424, 1010).

Under prong one, petitioner has failed to show counsel's performance on this issue fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Here, petitioner merely indicates two instances where requests were made and

9

accommodated. He cites no other specific instances where any such translation errors occurred without objection. In short, petitioner has failed to show that defense counsel's decision not to intervene on this issue was unreasonable under the circumstances. Moreover, petitioner's speculation that other errors may have occurred at trial likewise does not demonstrate the prejudice from any alleged errors, as required under prong two of *Strickland*.

### H. Failure to Move to Dismiss the Section 924(c) Count

Petitioner argues that defense counsel provided ineffective assistance by not moving to dismiss the Section 924(c) charge set forth in Count Three. (Pet.'s Br. at 24.). Petitioner highlights that, under the 2019 Supreme Court decision in *United States v. Davis*, a conviction under Section 924(c) cannot be predicated on a conspiracy to commit murder. *See* 588 U.S. 445, 469–70 (2019). Petitioner therefore claims that counsel should have moved to dismiss his conviction under Count Three for using a firearm during a crime of violence under Section 924(c). (Pet.'s Br. at 24.). The government argues in response that it is not unreasonable for counsel to fail to predict a future development of the law and that, even assuming that counsel should have predicted it, the failure to do so would have been inconsequential because the jury predicated the conviction on Count Three under Section 924(c) on both the conspiracy to murder Vanessa Argueta and Diego Torres (Count One) *and* the murder of Argueta (Count Two). (Gov. Opp'n at 9.). The Court agrees with the government.

First, as noted *supra*, to determine whether there was ineffective assistance of counsel under *Strickland*, it is necessary to consider the circumstances at the time of the alleged conduct. Here, the Supreme Court's ruling in *United States v. Davis* took place in 2019, long after petitioner's 2013 trial. Thus, it was not unreasonable for counsel to fail to anticipate this change in the law.

In any event, as the government correctly notes, any motion to dismiss the indictment on this ground would have had no effect on the outcome of the trial because the Section 924(c) charge set forth in Count Three in the indictment, and the conviction at trial, was based not only on the alleged conspiracy to murder charge, but also on the substantive murder charge. The Court notes that the same is true for the Section 924(c) charge set forth in Count Six with respect to the murder of Torres. Therefore, this claim also fails under the prejudice prong in *Strickland*. *See Stone v. United States*, 37 F.4th 825, 832 (2d Cir. 2022) (finding "the error of instructing the jury on the now-invalid predicate was harmless to [the defendant] because the jury found facts satisfying the essential elements of guilt on the valid predicate of substantive murder in aid of racketeering that would have sustained a lawful conviction on the firearm offense" (alteration adopted) (internal quotation marks omitted)).

### I. Failure to Move to Dismiss the Indictment for Lack of Jurisdiction

Petitioner claims that counsel's assistance was ineffective because his lawyer failed to argue that the trial court lacked jurisdiction to sentence petitioner on the ground that 18 U.S.C. § 3231 was "never constitutionally passed by Congress." (Pet.'s Br. at 25.). This argument is meritless.

As the government correctly notes, "at all times relevant to this case, it was well settled that the Court could exercise criminal jurisdiction pursuant to § 3231." (Gov.

10

Opp'n at 9.). Indeed, the Second Circuit has rejected this identical challenge to the court's jurisdiction under Section 3231. *See United States v. Farmer*, 583 F.3d 131, 151–52 (2d Cir. 2009).[2]

As noted above, strategic decisions of counsel to make or not make certain arguments are entitled to a strong presumption of reasonableness. *See Dunn*, 594 U.S. at 739. Here, given the clearly meritless nature of this argument, it was not unreasonable for defense counsel to fail to raise it. In any event, there is no prejudice to petitioner because any such argument, if raised, would have been rejected by the Court based upon *Farmer*.

J. Failure to Conduct an Independent Investigation

Finally, petitioner asserts that his counsel failed to subject the government's case to meaningful adversarial testing. (Pet.'s Br. at 28–29.). Petitioner suggests that counsel should have built an "independent defense" to disprove multiple statements, including that petitioner was a member of the MS-13 and that petitioner had not attempted to enhance his position in the organization. (Pet.'s Br. at 28–29.).

A trial will only be determined to be presumptively unfair if "counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing." *Bell v. Cone*, 535 U.S. 685, 686 (2002) (emphasis in original) (internal quotation marks and citation omitted). Here, having presided over the trial, the Court can confidently state that defense counsel did an exceptional job mounting a defense on the petitioner's behalf in the face of overwhelming evidence of the defendant's guilt on each of the charges. His investigation and preparation were evident throughout the trial, including in his thorough questioning of witnesses and objections to the government's evidence, as well as his opening and closing statements to the jury. Moreover, the strategic nature of each of the decisions that petitioner now challenges are evident from the record. Therefore, contrary to petitioner's contention, defense counsel meaningfully challenged the government's compelling evidence, and no aspect of his performance was constitutionally deficient. Moreover, petitioner has failed to demonstrate there is any probability, no less a reasonable probability, that any of the purported deficiencies affected the outcome of the trial.

IV. CONCLUSION

For the reasons stated above, Guzman has failed to demonstrate that he is entitled to relief under 28 U.S.C. § 2255. Therefore, his petition to vacate is denied in its entirety. Furthermore, for the reasons set forth above, petitioner has failed to make a substantial showing of a denial of a constitutional right, and therefore this Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)–(2). The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to Guzman and to close this case.

SO ORDERED.

---

[2] Once a bill has been signed by the Speaker of the House of Representatives and the President of the Senate in open session and approved by the President of the United States, "its authentication as a bill that has passed congress should be deemed complete and unimpeachable." *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892). This rule precludes challenges to Section 3231 based on alleged procedural irregularities in its enactment. *See Farmer*, 583 F.3d at 152.

_____
JOSEPH F. BIANCO
United States Circuit Judge
(sitting by designation)

Dated: August 6, 2025
Central Islip, New York

\*\*\*

Petitioner appears *pro se*. Marquette Branch Prison, 1960 U.S. Highway 41 South, Marquette, MI 49855.

The United States is represented by Assistant United States Attorneys Charles N. Rose and Megan E. Farrell, of the United States Attorney's Office for the Eastern District of New York, 610 Federal Plaza, Central Islip, NY 11722.

12